JOURNAL ENTRY AND OPINION.
{¶ 1} Appellant Konshawnte Tripplett appeals his conviction and sentence. Tripplett assigns the following errors for our review:
 "I. The State failed to produce sufficient evidence to prove that Mr. Tripplett was guilty of possession of criminal tools as alleged in the indictment. This deprived Mr. Tripplett of his right to due process, as guaranteed by the Fifth
and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution."
 "II. The trial court erred by imposing sentences in its journal entry when it did not impose those sentences in Mr. Tripplett's presence, in violation of Crim.R. 43(A), and the Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution."
 "III. The trial court erred by imposing court costs in its entry, but not in Mr. Tripplett's presence at sentencing, in violation of Crim.R. 43(A), and the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution."
 "IV. Konshawnte Tripplett was deprived of his right to the effective assistance of counsel, in contravention of the Sixth and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio Constitution."
 {¶ 2} Having reviewed the record and pertinent law, we affirm Tripplett's conviction, but remand for re-sentencing to comport with the requirements of Crim.R. 43(A). The apposite facts follow.
 {¶ 3} On January 20, 2005, the Cuyahoga County Grand Jury indicted Tripplett on one count each of drug possession, corrupting another with drugs, tampering with evidence, and possession of criminal tools. Tripplett pled not guilty at his arraignment. After numerous pre-trial conferences were conducted, a jury trial commenced on April 26, 2005.
 Jury Trial {¶ 4} Detective David Sims of the Cleveland Police Department testified that on December 1, 2004, he arranged for a confidential reliable informant to make a controlled drug buy with marked money at 1010 East 70[1] Street, apartment #4, Cleveland, Ohio. The informant made the buy of one rock of crack cocaine and indicated he had purchased it from a female occupant at that address. Therefore, the officer obtained a search warrant for the residence.
 {¶ 5} Two days later, Detective Sims arranged for a second controlled drug buy at the same residence. The same confidential informant returned with one rock of crack cocaine, which he claimed to have purchased from a female occupant. Detective Sims stated after the second controlled buy, the Cleveland Police SWAT unit executed the search warrant.
 {¶ 6} Detective Sims testified he entered the apartment after the SWAT unit had secured it. He found Tripplett, a young girl named Cecelia Marks, and three other adults in the apartment. Detective Sims stated that he observed a camera that was pointed at the street, which he later learned was connected to a television monitor and video recording equipment located in Tripplett's bedroom. Detective Sims testified that the police recovered a rock of crack cocaine from a shelf in the bathtub and also recovered a bag of marijuana, along with several pieces of mail addressed to Tripplett.
 {¶ 7} Swat Officer Jose Delgado testified that he was assigned the duty of breaching the front door of the residence. Officer Delgado stated that upon entering the apartment, he proceeded to the bathroom, but found the door locked. He then broke the door down and found Tripplet and Marks hiding in the bathtub behind the shower curtain. Officer Delgado stated that the water in the toilet bowl was swirling and he saw a rock of crack cocaine floating in the water. Officer Delgado further stated that Tripplett's arm and shirt sleeve were wet.
 {¶ 8} Sergeant Fred Mone, another member of the SWAT unit, testified that he found a rock of crack cocaine in the bathtub.
 {¶ 9} Cecelia Marks, age fourteen, testified that at the time the police executed the search warrant, she had been living with Tripplett for several months. Marks testified that during this time, Tripplett had given her drugs to sell. Marks stated that when the SWAT unit arrived, she hid with Tripplett in the bathroom, and Tripplett unsuccessfully tried to flush the crack cocaine down the toilet.
 {¶ 10} Marks testified that at the time of her arrest, she told the police that the drugs belonged to her and not to Tripplett. She also stated that she had indicated to Tripplett's attorney, by telephone and in writing, that the charges against Tripplett were false.
 {¶ 11} Marks admitted that in exchange for her testimony against Tripplett, her juvenile court charges for tampering with evidence, a third degree felony, would be reduced to obstruction of official business, a misdemeanor charge, for which she was promised probation. Finally, Marks admitted, in attempting to help Tripplett, she had lied both to the police and to Tripplett's attorney.
 {¶ 12} At the conclusion of the trial, the jury returned guilty verdicts on all charges. On May 26, 2005, the trial court sentenced Tripplett to a concurrent prison term of five years.
 Sufficiency of Evidence {¶ 13} In the first assigned error, Tripplett argues the evidence was insufficient to sustain a conviction for possession of criminal tools. We disagree.
 {¶ 14} A challenge to the sufficiency of the evidence supporting a conviction requires the appellate court to determine whether the State met its burden of production at trial.[1] On review for legal sufficiency, the appellate court's function is to examine evidence admitted at trial and determine whether such evidence, if believed, would convince the average person of the defendant's guilt beyond a reasonable doubt.[2] In making its determination, an appellate court must view the evidence in a light most favorable to the prosecution.[3]
 {¶ 15} Tripplett was convicted of possession of criminal tools in violation of R.C. 2923.24, which provides in pertinent part as follows:
 "(A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally.
 (C) Whoever violates this section is guilty of possessing criminal tools. Except as otherwise provided in this division, possessing criminal tools is a misdemeanor of the first degree. If the circumstances indicate that the substance, device, instrument, or article involved in the offense was intended for use in the commission of a felony, possessing criminal tools is a felony of the fifth degree."
 {¶ 16} In the instant case, Tripplett specifically contends that the video camera located outside his apartment, which was connected to a video recorder and television in his bedroom was not used to commit a felony. We are not persuaded.
 {¶ 17} Detective Sims testified in pertinent part as follows: 
 "A. Once we — once I entered the premises, one of the SWAT members told me: He's got a video hookup where you can see the street, people coming, people leaving the house. I entered the bedroom; you can see people driving down the street, walking down the street, right on the TV, the monitor.
 Q. Which TV? You said you recovered a smaller monitor and a 19-inch I believe it was.
 A. Yes.
 Q. Which monitor was showing you what you just described?
 A. Both of the TVs were on."
 "* * *
 "Q. Now, based on your knowledge and experience as a Cleveland vice detective, what does a set-up such as the one you just describe in Exhibits 14 through 20 indicate to you?
 A. This set-up indicates to me that this person knew what he was doing. He was trying to prevent being captured from doing what he was doing and it was a good set-up."
 "* * *
 "Q. Okay. Thank you. How would it prevent someone who used that set-up from being caught by the police?
 A. Well, if he can see us coming, they can get rid of the drugs or they can even escape from the location."[4]
 {¶ 18} After viewing the evidence in the light most favorable to the State, we conclude the testimony supports a determination that Tripplett possessed criminal tools. Detective Sims' testimony revealed an elaborate video surveillance system, which was monitored from Tripplett's bedroom. Detective Sims also testified that two controlled drug buys were effected at the residence including one that occurred shortly before the police executed the search warrant.
 {¶ 19} Further, Officer Delgado testified that when he entered the bathroom, the toilet had just been flushed and he saw a rock of crack cocaine floating in the water. The totality of the circumstances indicate that the video surveillance equipment was being used for a criminal purpose. As such, the State presented sufficient evidence to convict Tripplett of possessing criminal tools. Accordingly, we overrule the first assigned error.
 Ineffective Assistance of Counsel {¶ 20} In his fourth assigned error, Tripplett argues his counsel was ineffective for allegedly conceding that he was guilty of drug possession. We disagree.
 {¶ 21} We review a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v. Washington.[5] UnderStrickland, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance.[6] To show prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different.[7] Judicial scrutiny of a lawyer's performance must be highly deferential.[8]
 {¶ 22} In his closing argument, Tripplett's trial counsel made the following statement:
 "If you want to find Mr. Tripplett guilty of possession of drugs, if you think the State proved that because he was in the bathroom with these rocks of crack cocaine, please go ahead. I don't have a big problem with that. It's everything else that is real distasteful to me. I'm very serious. And I don't think it's been proven beyond a reasonable doubt."[9]
Admittedly, the above statement is not the most artful. However, we decline to conclude that trial counsel conceded Tripplett's guilt to the charge of drug possession. The record before us reveals that Tripplett's trial counsel expended a considerable effort and time discrediting Marks' testimony that the drugs did not belong to her. The following exchange took place during cross examination of Marks:
 "Q. Cecelia, you're telling us that you're telling the truth today?
 A. Yes.
 Q. So in other words, when you told the police back at the time of your arrest, that was a lie?
 A. Yes.
 "* * *
 "Q. Do you remember calling me on the phone to tell me about Shawn, Konshawnte?
 A. Yes.
 Q. Do you remember telling me that the charges were all false?
 A. Yes.
 Q. Were you lying then?
 A. Yes.
 Q. Were you telling the truth?
 A. I was lying."[10]
 {¶ 23} Here, Tripplett's trial counsel elicited three separate admissions from Marks that she was lying. The record also reveals that Tripplett's trial counsel continued to attack Marks' credibility during closing argument. During closing argument Tripplett's trial counsel stated:
 "Before you can find the defendant guilty you must find beyond a reasonable doubt, you'll read the rest, to commit a felony drug abuse offense, to-wit possession of drugs; it flies in the face of reason. She's in the bathroom. She's now denying all possession of drugs."[11]
 {¶ 24} We decline to view the statement at issue in a vacuum. We conclude that when Tripplett's trial counsel's attack on Marks' credibility is juxtaposed with the statement he made during closing argument, a rational juror would not infer that the statement was made as a concession of guilt to drug possession.
 {¶ 25} We also conclude that Tripplett was not prejudiced by trial counsel's statement because there was sufficient evidence that Tripplett constructively possessed the drugs. Possession may be actual or constructive.[12] To establish constructive possession, the evidence must prove that the defendant was able to exercise dominion and control over the contraband.[13] Dominion and control may be proven by circumstantial evidence alone.[14] Circumstantial evidence that the defendant was located in very close proximity to readily usable drugs may constitute constructive possession.[15]
 {¶ 26} In the case herein, viewing the evidence presented in a light most favorable to the prosecution, the testimony of Detective Sim, Officer Delgado and Sergeant Mone supports the determination by the jury that Tripplett did, in fact, constructively possess crack cocaine at the time of his arrest. A review of the record demonstrates that the State established that Tripplett exercised both dominion and control over the crack cocaine discovered in the bathroom. Detective Sims testified the officers found a rock of crack cocaine on the shelf in the bathtub where Tripplett was attempting to hide. Office Delgado also testified that a rock of crack cocaine was floating in the toilet. Clearly, the State established that the crack cocaine was within arms length of Tripplett at the time the search warrant was executed.
 {¶ 27} Under the circumstances presented herein, any rational trier of fact could have found from the evidence presented that the essential elements of the offense of drug possession were proven beyond a reasonable doubt.[16] As such, the outcome of the trial would not have been different, despite trial counsel's statement. When viewed in its entirety, Tripplet was not denied the effective assistance of counsel. Accordingly, we overrule the fourth assigned error.
 Sentencing {¶ 28} We sustain Tripplett's second and third assigned errors. The State concedes that the trial court erred when it sentenced Tripplett without informing him of the specific sentence imposed for each individual count for which the jury found him guilty and the trial court erred in imposing court costs outside Tripplett's presence.
 {¶ 29} At sentencing, a trial court has no option but to assign a particular sentence to each offense, separately.[17] Further, Crim.R. 43(A) requires the physical presence of a defendant during sentencing.[18] Moreover, a trial court cannot abrogate the defendant's right of allocution by imposing its sentence in the defendant's absence.[19]
 {¶ 30} Based on the above authority, we vacate the journal entry in its entirety and remand the matter for the limited purpose of re-sentencing Tripplett in conformity with Crim.R. 43(A).
Conviction affirmed, remanded for re-sentencing.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, P. J., and MICHAEL J. CORRIGAN, J.*, CONCUR
* SITTING BY ASSIGNMENT: JUDGE MICHAEL J. CORRIGAN, RETIRED, OF THE EIGHTH DISTRICT COURT OF APPEALS.
[1] State v. Thompkins (1997), 78 Ohio St.3d 380.
[2] Id.; State v. Fryer (1993), 90 Ohio App.3d 37.
[3] Id. at 43.
[4] Tr. at 219-221.
[5] (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052.
[6] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph one of syllabus.
[7] Id. at paragraph two of syllabus.
[8] State v. Sallie (1998), 81 Ohio St.3d 673, 674.
[9] Tr. at 361-362.
[10] Tr. at 282-283.
[11] Tr. at 355.
[12] State v. Trembly (2000), 137 Ohio App.3d 134. See also State v.Haynes (1971), 25 Ohio St.2d 264; State v. Hankerson (1982),70 Ohio St.2d 87.
[13] State v. Wolery (1976), 46 Ohio St.2d 316, 332.
[14] State v. Taylor (1997), 78 Ohio St.3d 15.
[15] State v. Barr (1993), 86 Ohio App.3d 227, 235; Wolery, supra;State v. Bell (May 14, 1998), Cuyahoga App. No. 72691.
[16] State v. Lundy (June 25, 1998), Cuyahoga App. No. 71849;State v. Jimenez (Nov. 25, 1998), Cuyahoga App. No. 73804.
[17] State v. Saxon, 109 Ohio St.3d 176, 2006-Ohio-1245.
[18] State v. Bell (1990), 70 Ohio App.3d 765.
[19] State v. Pavone (June 21, 1984), Cuyahoga App. No. 47700.